UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-174-GWU

EARLENE HENSLEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

3.   The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.   At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.   If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. *Ibid*. In such cases, the agency may be required to consult a vocational specialist. *Damron v. Secretary*, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Earlene Hensley, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity, chronic low back pain secondary to mild lumbar spondylosis with mild disc bulging at L4-L5 and L5-S1, chronic right shoulder pain, and a pain disorder.  (Tr. 184).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Hensley retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 188-92).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, including the ability to sit six hours and stand or walk six hours in an eight hour day, and also had the following non-exertional restrictions. She: (1) could perform no more than frequent pushing and pulling or reaching overhead with the right upper extremity; (2) no more than frequent stooping, kneeling, crouching, crawling, squatting or bending; (3) needed to avoid concentrated exposure to full body vibration and avoid hazards such as unprotected

heights and dangerous machinery; (4) retained the mental capacity to understand, remember, and carry out simple work instructions, sustain concentration to persist at simple work tasks in extended two hour segments in an eight hour day, adequately relate to coworkers and supervisors in object-focused work environments in which contact was casual and infrequent; (5) should have limited contact with the general public; and (6) would be able to adapt to routine changes in a routine work environment.  (Tr. 224).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 225).  On the other hand, if the restrictions given by the plaintiff's treating physician, Dr. Peter Wright, were accepted, her sitting, walking, and standing restrictions would not permit full-time employment.  (Tr. 226).

On appeal, this court must determine if the administrative decision is supported by substantial evidence.

The plaintiff alleged disability beginning September 16, 2005 due to chronic neck, shoulder, back, and leg pain.  (Tr. 336).  Her onset date was the day she had a motor vehicle accident.  (Tr. 206, 336).  She testified to being in such severe pain that she had to lie in bed most days, and that she could walk only about 50 feet or stand for 20 minutes before her pain became unbearable.  (Tr. 209, 212).  Her arms and hands were also weak, and she thought she could lift only 5 pounds off a table.

8

(Tr. 213-14). She was on medication for panic attacks, but had not been to a mental health professional except for a Social Security examination. (Tr. 215). She was regularly treated by Dr. Peter Wright, a physician at the Pain Treatment Center, but had lost her insurance and could not have all of the treatment, such as epidural injections which had given her temporary relief. (Tr. 212).

The transcript contains numerous treatment notes, which reflect the fact that Mrs. Hensley had complaints of pain well before the motor vehicle accident. (E.g., Tr. 525-40). After her accident, emergency room x-rays were normal (Tr. 399-403) and an MRI of the lumbrosacral spine on September 2, 2005 showed mild spondylosis with bulging discs at two levels and no evidence of stenosis or herniation (Tr. 387). An office note from the Pain Treatment Center dated October 11, 2005 describes the MRI as essentially normal but the plaintiff was continued on pain medications, which included Oxycontin, and her dosage of Lorcet was increased. (Tr. 509, 540). She was also given an appointment for lumbar facet injections. (Tr. 509). The October 11, 2005 note has spaces for signatures from "Jason Wright, P.A.-C" and "Fani B. Manney, M.D." but is not actually signed by either of them. (Id.).

Dr. Peter Wright, who had already performed lumbar epidural and bilateral sacroiliac joint injections (Tr. 519), began treating the plaintiff regularly for conditions which he diagnosed as lumbar radiculitis, lumbar degenerative joint disease,

9

arthralgia of the lumbar region, lumbar facet syndrome, sacroiliitis, cervical facet arthropy, and cervical radiculitis by November 9, 2005 (Tr. 508) and provided facet injections, epidural lumbar injections, right supra scapular injections, and cervical medial branch blocks (Tr. 499-508).  His notes in early 2006 indicated that the plaintiff would receive several weeks of good relief from her injections, but for financial reasons was not able to continue to take this treatment.  (Tr. 646-51).  He noted in October, 2006 that the plaintiff was also complaining of numbness and apparent weakness in her hands, and had a positive Phalen's test.  (Tr. 639).  At that time he again noted her options were limited due to her financial status and no insurance, but she was currently unable to work.  (Id.).  He provided bilateral wrist braces for carpal tunnel syndrome.  (Id.).

Also on October 24, 2006, Dr. Wright wrote a letter stating that Mrs. Hensley's pain complaints had worsened since her motor vehicle accident, and that she had gone from "being someone who had pain but was able to continue to work and be productive to someone that had pain, yet was no longer able to work secondary to the pain."  (Tr. 1037).  He felt that her accident had most likely exacerbated an underlying pain condition and she was finding it difficult to do more than her regular activities of daily living.  (Id.).  Dr. Wright's treatment continued in 2007 and 2008 in terms of prescribing medication, including the Oxycontin, and the plaintiff indicated at some points that the medications were working well.  (E.g., Tr.

1049, 1051, 1053).  She was complaining of increased pain in June, 2008, however. (Tr. 1044).  Dr. Wright and a physician's assistant wrote prescription pad notes from time to time indicating that the plaintiff had to remain off work.  (Tr. 583, 1135).

On May 15, 2008, Dr. Wright prepared an assessment form indicating that Mrs. Hensley could lift and carry 20 pounds occasionally and 10 pounds frequently, but was limited to a total of only two hours of sitting, standing, and walking in an eight hour day "with breaks."  (Tr. 1033).  She could use her hands frequently to grasp and manipulate, but not to push or pull, nor could she repetitively use her feet for operation of foot controls.  He opined that she should never crawl or climb, could occasionally bend, squat, and reach above shoulder level, had total restrictions on marked changes in temperature and humidity, moderate restrictions on being around moving machinery and exposure to dust, fumes, and gases, and mild restrictions on working around unprotected heights.  (Id.).

There are also two one-time examinations in the record.

Dr. Barry Burchett examined Mrs. Hensley on July 13, 2006 and noted limited abnormalities, such as possible abnormal curvature of the lumbar spine and a significantly diminished sensation in both feet to the ankle level.  (Tr. 550-1).  The plaintiff described pain from a torn right shoulder ligament, and although she did have a normal range of motion on the examination, Dr. Burchett concluded that she

would probably be limited in activities requiring her to hold her arms above shoulder height.  (Tr. 552).

Dr. Kip Beard performed an examination on January 30, 2007 and reviewed Dr. Burchett's report.  (Tr. 593).  Mrs. Hensley stated that she had a problem with back pain off and on since her teenage years, but could deal with it up to the time of the motor vehicle accident in 2005; since that time she had lost her job and had difficulty affording healthcare.  (Tr. 591).  She reported that bilateral carpel tunnel syndrome had been diagnosed in December, 2006 and she had numbness, tingling, and pain in both hands, and would drop objects.  (Tr. 592).  She was wearing her wrist splints.  Dr. Beard's examination showed a slow gait, but the plaintiff was able to stand unassisted and seemed comfortable when seated, although she was uncomfortable when supine.  (Tr. 593-4).  She became tearful after doing one-fourth of a squat, complaining that her back had "locked up."  There were complaints of pain on range of testing of the cervical spine and shoulders, as well as the lower back, but she could perform manipulations, bend forward 70 degrees, and stand on one leg at a time.  (Tr. 595).  Dr. Beard also noted diminished sensation in the feet, and Tinel's testing for carpel tunnel syndrome was "equivocal."  Dr. Beard listed his impressions as chronic thoracolumbar strain, lumbar degenerative disc disease "by history," bilateral carpel tunnel syndrome, and cervical and right shoulder strain.  (Tr.

596).  In terms of restrictions, he opined only that her history and objective finding were suggestive of limitations in repetitive bending and "heavy lifting."

A state agency reviewing source who was not a medical doctor completed a functional capacity assessment after Dr. Burchett's examination but before Dr. Beard's examination, and concluded that the plaintiff would be capable of performing medium level work with no non-exertional restrictions. (Tr. 574-81). She did not even accept Dr. Burchett's opinion regarding activities holding arms above shoulder height.  (Tr. 580).  After Dr. Beard's examination, state agency reviewer Dr. Timothy Gregg affirmed this initial assessment with no additional comments. (Tr. 613-19).  Like the previous reviewer, he noted that there were examining source conclusions about the claimant's limitations or restrictions which were significantly different from his findings, but he provided no rationale of any kind for the disagreement.  (Tr. 618).  Of course, neither of these sources were able to review or comment on the treating physician's 2008 restrictions.

One of the plaintiff's arguments on appeal is that the ALJ erred in not giving controlling weight to the opinion of the treating physician, and, in addition, that his reasoning for refusing to accept Dr. Wright's opinion was not adequate.

Generally, the opinion of a treating physician is entitled to greater weight than a one-time examiner or a reviewing source, and it must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic

13

techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). Where a treating physician is not given controlling weight the ALJ is required to weigh a number of factors, such as the length of the treatment relationship, the frequency of examination, the extent of the physician's knowledge of the impairment, the amount of relevant evidence supporting the physician's opinion, the extent to which the opinion is consistent with the record as a whole, the specialization of the treating source, and any other relevant factors tending to support or contradict the opinion. Id.

The ALJ's rationale for rejecting a treating source opinion must always be accompanied by "good reasons" which are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave the treating source's medical opinion and the reasons for that weight." Social Security Ruling (SSR) 96-2p, at *5. Part of the rationale for giving good reasons is to allow a claimant to understand the disposition of his case, and a failure to follow the procedural requirement is a ground for remand. Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004). In some circumstances a failure to follow the rule may be seen as harmless error, such as when the treating source opinion is so patently deficient that the Commissioner could not possibly credit it. Id. at 547.

In the present case, the ALJ's rationale for rejecting Dr. Wright's opinion that the plaintiff was no longer able to work due to pain was that such an opinion was not

consistent with his treatment notes and diagnostic testing, but he specifically cites only one piece of evidence as being inconsistent; namely, that "on October 11, 2005, Dr. Wright reported that the claimant's MRI of [the] lumbar spine was 'essentially normal.'" (Tr. 190). As previously noted, the October 11, 2005 office note was unsigned, and apparently conducted by physician's assistant Jason Wright or Dr. Fani Manney. Two paragraphs later, the ALJ reiterated the same line of reasoning in discussing the restrictions in the medical assessment form completed by Dr. Wright, making the conclusory statement that it was inconsistent with the objective evidence and his treatment notes, and that "he is the same physician who indicated the claimant's MRI of the lumbar spine was 'essentially normal.'" (Id.).

As further support for his findings, the ALJ stated that the plaintiff's activities of daily living were inconsistent with disability, citing statements that she could attend to her personal hygiene, do local driving, watch television shows and movies, cook simple food in the microwave, shop for groceries with her daughter, do laundry, take care of her dog, talk on the phone, read romance novels, collect movies, and enjoy visiting with her grandchildren. (Id.). He cited the opinions of the state agency reviewing sources and specifically the assessment of Dr. Kip Beard. (Id.).

Applying the principles set out above, the court concludes that the ALJ's rationale for rejecting Dr. Wright was inadequate. Specifically, although there was

a note from a physician indicating that the plaintiff's MRI was essentially normal, Dr. Wright was not the author of the note, and thus it was not specifically contrary to his opinion. Also, merely stating that Dr. Wright's opinion was inconsistent with the medical evidence without giving other examples does not fulfill the requirements of the regulations. Even though there are certain factors in Dr. Wright's notes which <u>could</u> be interpreted as being inconsistent with his conclusions, "[a] court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion . . . . To recognize substantial evidence as a defense to non-compliance with § 1527(d)(2) would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory." <u>Wilson</u>, 378 F.3d at 546 (citations omitted).[1]

The ALJ's recitation of the plaintiff's daily activities as being inconsistent with disability was also one-sided. The Sixth Circuit has noted that somewhat minimal daily activities such as driving, cleaning an apartment, caring for two dogs, doing laundry, reading, and watching the news were not comparable to typical work

---

[1]Although the ALJ described Dr. Wright's assessment as "very limiting" (Tr. 190), it is mainly limited with regard to sitting, standing, and walking. This is not a case in which a physician was indicating that a patient could lift essentially no weight or was incapable of performing any postural activity at any time. This does not establish that the opinion should be given controlling weight, but it was not so extreme that the Commissioner could not possibly credit it, either.

activities.  <u>Rogers v. Commissioner of Social Security</u>, 486 F.3d 234, 248 (6th Cir. 2007).  The Sixth Circuit was also critical of the ALJ in <u>Rogers</u> for mischaracterizing the plaintiff's testimony by leaving out contrary statements.  <u>Id.</u> at 248-9.  In the present case, the plaintiff also stated that she would lie in bed for most of the day, could only stand 20 minutes before her pain was unbearable, used a wheelchair buggy when shopping, had difficulty taking a shower, and would only cook when her daughter was not present and she could microwave something in 3 minutes.  (Tr. 217-18).  These allegations were not mentioned by the ALJ in summarizing the plaintiff's daily activities.

Nor do the opinions of the state agency reviewing sources provide substantial evidence to support the rejection of the treating physician, since one of the sources was not a medical professional and neither of them had the benefit of a review of the entire record or provided a rationale for disagreeing with examining and treating sources.  <u>See</u> SSR 96-6p.  Essentially, the ALJ's rationale comes down to a reliance on Dr. Beard, who saw the plaintiff on only one occasion and apparently only had Dr. Burchett's records to review.

In summary, the ALJ provided an inadequate rationale for rejecting the treating physician opinion, and a remand will be required for further consideration. Regarding the plaintiff's other issues concerning the ALJ's consideration of the plaintiff's impairments in combination, the durational requirements of her ability to

 perform work, and the relevance of evidence submitted after the date of the ALJ's decision, the court finds that they are without merit for the reasons given in the Commissioner's brief, Docket Entry No. 10, pp. 8 (fn.1), 13-14.  However, the Commissioner may consider the new evidence on remand.

The decision will be remanded for further consideration in accordance with this opinion.

This the 23rd day of February, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**